**HOUTCHENS v. STATE.**

No. 1706—6231.

Commission of Appeals of Texas, Section A.

Nov. 1, 1933.

1012

Arthur Lee Moore, Chester B. Collins, Simpson, Brewster & Rogers, and Harold

Craik, all of Fort Worth, for plaintiff in error.

Julian Mastin, of Dallas, and Frank A. Ogilvie and William R. Watkins, both of Fort Worth, for the State.

CRITZ, Judge.

This is a disbarment proceeding which was instituted in the district court of Tarrant county, Tex., in the name of the state against S. F. Houtchens, a practicing attorney of such county. The proceeding was filed under the provisions of article 313 et seq., R. C. S. 1925. The complaint charges Houtchens with numerous acts of fraudulent and dishonorable conduct and malpractice. The complaint was signed by six prominent attorneys of the Tarrant county bar. The case was tried in the district court with a jury, and was submitted on special issues. Based on the answers of the jury, which found Houtchens guilty on many of the acts charged in the complaint, the trial court rendered a judgment of absolute disbarment against Houtchens. This judgment was affirmed by the Court of Civil Appeals. 47 S.W.(2d) 679. Houtchens brings error.

■ It is the settled law of this state that a disbarment proceeding is in the nature of a civil case. Houtchens v. Mercer, 119 Tex. 431, 29 S.W.(2d) 1031, 69 A. L. R. 1103. It follows that the general rules of practice and procedure applicable to civil cases should govern in the trial of a disbarment proceeding.

The record in this case is very voluminous. The transcript contains more than 700 pages, and the statement of facts nearly 1,000 pages. The latter document discloses evidence in abundance, in law sufficient to justify the disbarment of Houtchens. We, therefore, overrule all assignments contending that there is no evidence in this record to support the judgment. In this connection, however, it may be that some of the counts in the complaint are not supported by the evidence, and in view of the fact that the case will be remanded for another trial, we suggest that only the counts that are supported by evidence of probative force be submitted to the jury.

As already shown, this proceeding was begun by complaint signed by six very prominent attorneys. Five of these attorneys constituted the "Discipline and Investigating Committee" of the Fort Worth and Tarrant county bar association, while the sixth was president of such association.

■ Counsel for Houtchens, by their briefs, and written and oral arguments, earnestly contend that the complaint or petition should be quashed because it is signed and sworn to by more than one attorney. In this connection it is pointed out that the statute, article 314, provides that the complaint shall be signed by "a practicing attorney." We think this contention should be overruled. There is nothing in the statute which would prevent more than one attorney signing the complaint.

■ Counsel for Houtchens contend that the complaint is subject to be quashed because the affidavit thereto is made on information and belief. We overrule this contention. A reading of the statute discloses that it only permits an attorney to be tried in a disbarment proceeding on a complaint signed by a practicing attorney, a county commissioner, or a justice of the peace. This is evidently done so that attorneys cannot be subjected to such trials by irresponsible parties, or parties who may act from spite or malice. However, it is hardly to be concluded that the Legislature intended that the limited class who may make the complaint must act alone on his own personal knowledge of the facts stated in such document. Furthermore, there is no reason to hold that the complainant must swear absolutely to the facts of the complaint on his own knowledge when the proceeding is not summary, but subject to a trial in due form of law, with the right of appeal and supersedeas.

■■ As already shown the petition in this case was signed by six prominent attorneys. The affidavit to this petition reads as follows: "'Before me, the undersigned authority, on this day personally appeared Dexter W. Scurlock, B. B. Stone, John Hancock, Aubrey G. Alexander, M. L. Massingill and Hugh B. Smith, who first being by me duly sworn each for himself deposes and says that the allegations contained in the foregoing petition and complaint are true in fact and in substance to the best of the knowledge and belief of each and all of the affiants after investigations, hearings through the presence of witnesses, and affidavits of witnesses as well as transcripts and court records; that the first five named affiants constitute the Discipline and Investigating Committee of the Fort Worth and Tarrant County Bar Association, while the last named affiant is the President of said Association, and all of said affiants are duly licensed lawyers in Tarrant County and the State of Texas and do practice as such.'"

As we understand from the record, the above affidavit was read to the jury. It will be noted that the statute, article 314, supra, merely requires that the complaint be sworn to. It was certainly highly prejudicial to Houtchens to permit an ex parte statement showing the matters contained in this affidavit to be read to the jury. The complaint in a case like this is merely the state's pleading, and is no evidence of guilt. It was certainly prejudicial to Houtchens to allow the fact to reach the jury that such a committee composed of six of his fellow lawyers had investigated his conduct in the way and man-

ner set out in the affidavit. In this connection we hold that the fact that the affidavit contains these incompetent matters does not invalidate the complaint, but such surplus matters should be stricken therefrom, and not allowed to reach the jury in any form.

Among other instructions the court gave to the jury the following charge: "You are the exclusive judges of the facts proven, the credibility of the witnesses, and of the weight to be given their testimony. In determining the weight to be given to the testimony of a witness, you will take into consideration the intelligence of the witness; the circumstances surrounding the witness at the time concerning which he testifies; his interest (if any) in the result of the suit; his bias or prejudice (if any); his manner on the witness stand; his apparent fairness or want of fairness; the reasonableness of his testimony; his means of observation and knowledge; the character of his testimony, whether negative or affirmative; and all matters and facts and circumstances shown on the trial, bearing upon the question of the weight to be given to his testimony; and give to the testimony of each witness such weight as to you it may seem fairly entitled to. On the other hand, if you believe from all that you have seen or heard at the trial that any witness has wilfully sworn falsely to any of the facts mentioned in the instructions herein, then you are at liberty to disregard entirely the testimony of such witness."

Counsel for Houtchens objected to the above charge, except the first sentence thereof on the ground, in substance, that it was a general charge in violation of article 2189, R. C. S. 1925, and on the weight of the evidence in violation of article 2185, R. C. S. 1925. The charge was subject to both these objections.

In regard to the question of a general charge, it is not proper, as the general rule, to give such charges when the case is submitted to a jury on special issues. Under such submissions the statute confines the court's instructions to such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass on and render a verdict on the issues submitted. Article 2189, R. C. S. 1925; St. Louis Southwestern R. Co. v. Hudson (Tex. Com. App.) 17 S. W.(2d) 793, and authorities there cited.

Further discussing the above charge, we hold that it was proper for the court to tell the jury that they were exclusive judges of the facts proven, the credibility of the witnesses' weight to be given to their testimony, but the balance of the charge was highly argumentative, and on the weight of the evidence. Article 2185, R. C. S. 1925; Davidson v. Wallingford, 88 Tex. 619, 32 S. W. 1030; Dwyer v. Bassett, 63 Tex. 274; Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 47 S.

W. 971; Willis & Bro. v. Whitsitt, 67 Tex. 673, 4 S. W. 253.

The trial court also charged the jury as follows:

"The burden of proof is on the state to establish the guilt of the defendant by a clear preponderance of the evidence.

"By a 'clear preponderance of the evidence' as that expression is used in this charge, the court means that the evidence and circumstances admitted under the rulings of the court during the progress of the trial, and before you for consideration, must be of such a nature, in respect to each alleged act of misconduct, as to reasonably and clearly establish the defendant's guilt by a preponderance of the evidence; and, if you entertain a reasonable doubt as to the sufficiency of the proof to so establish his guilt, it is your duty to find him 'not guilty' of the alleged act or acts complained of.

"By 'reasonable doubt' the court does not mean that you should find the defendant 'not guilty' if there is a mere possibility, under all the evidence and circumstances of the case that he is not guilty. A reasonable doubt is not a possible doubt, not a conjectural doubt, not a doubt of the absolute certainty of the guilt of the defendant. Everything relating to human affairs and depending upon moral evidence is open to conjectural or imaginary doubt. Absolute certainty is not required by law. Such doubt must be a real and substantial doubt of the defendant's guilt with a view of all the evidence in the case, and not a mere possibility of his innocence."

We think a careful reading of the first two charges just above quoted will disclose that they clearly contradict each other. The first charge on burden of proof instructs the jury, in effect, that the burden of proof is on the state to establish the guilt of the defendant by a "clear preponderance of the evidence." The next charge tells the jury, in effect, that if they have a "reasonable doubt" as to the sufficiency of the proof to establish the guilt of the defendant, to acquit him. Thus in one charge we have the amount of proof fixed at a "clear preponderance of the evidence," while in the other it is fixed to a degree beyond a "reasonable doubt." This was confusing to the jury.

The term, clear preponderance of the evidence, is a simple one, and any effort to define it but leads to confusion. Maryland Casualty Co. v. Boverie (Tex. Civ. App. writ refused) 37 S.W.(2d) 310; Stine Oil & Gas Co. v. English (Tex. Civ. App.) 185 S. W. 1009.

Our statute, article 316, provides: "Art. 316. Upon the return of said citation executed, if the defendant appear and deny the charge, the cause shall be docketed for trial and conducted in the name of the State of Texas against the defendant. The county or district attorney shall represent the State.

A jury of twelve men shall be impaneled, unless waived by the defendant. If the attorney be found guilty, or if he fail to appear and deny the charge after being duly cited, the said court, by proper order entered on the minutes, may suspend his license for a time, or revoke it entirely, and may also give proper judgment for costs."

As already shown, a disbarment proceeding, under our statutes, is in the nature of a civil case. The statute above quoted absolutely guarantees the defendant a trial by jury. As already stated, such trial should be conducted according to the general rules of procedure applicable to civil cases. The right of trial by a jury certainly carries with it the right to have the jury pass on all controverted fact questions under proper instructions.

The authorities are not uniform as to the amount of proof necessary to sustain a charge of malpractice against an attorney. Some courts hold, that the evidence must establish guilt "beyond reasonable doubt," while other jurisdictions only require a "preponderance of the evidence." We think this seeming conflict has resulted largely from the fact that some jurisdictions regard the charge and trial as criminal in their natures; while others regard them as of a civil nature. 6 C. J. p. 607, § 77. Since the proceeding is civil in its nature under our holdings, we think the preponderance rule should be applied.

Under our holding above, the charge on amount of proof should go no further than to instruct the jury that the burden of proof is on the state to establish the guilt of the defendant by a preponderance of the evidence. Even this charge can be dispensed with by submitting each issue so framed as to require the answer to be based on a preponderance of the evidence, and this is the better practice in special issue submissions. Federal Surety Co. v. Smith (Tex. Com. App.) 41 S.W.(2d) 210.

Of course, the above holding has eliminated the issue of reasonable doubt, but even in cases where the quantum of proof must be beyond a reasonable doubt, that term should not be defined, as any effort to amplify or explain it almost invariably leads to confusion, and therefore to a reversal. Bray v. State, 41 Tex. 561; Schultz v. State, 20 Tex. App. 315; Bramlette v. State, 21 Tex. Cr. App. 611, 2 S. W. 765, 57 Am. Rep. 622; Holmes v. State, 9 Tex. App. 313; Cleavinger v. State, 43 Tex. Cr. R. 274, 65 S. W. 89. There are many more authorities to the same effect, but the ones cited are sufficient to demonstrate the correctness of our holding. We merely mention this to show the confusion that the several charges may have caused in the minds of the jury.

We also think the charges attempting to define "clear preponderance of the evidence," and "reasonable doubt" are both highly argumentative, and on the weight of the testimony. In this connection it might be contended that these charges, taken as a whole, are more favorable to the defendant than he was entitled to. If the charge had gone no further than to apply the reasonable doubt rule as to the amount of proof, this would be true, but when we consider that the charges, taken as a whole, are contradictory, ambiguous, argumentative, and on the weight of the testimony, we are unable to say that Houtchens was not injured. Certainly these matters were calculated to injure him.

There are several bills of exception in the record touching the admission of incompetent evidence. It would extend this opinion too far to discuss the matters shown by these bills in detail. One of them shows that one of the attorneys who signed the complaint was permitted to testify in regard to the investigations made by the above indicated bar committee touching Houtchens' misconduct as a lawyer prior to the filing of this complaint. As we understand the record, this witness was permitted to state that he and the other members of the committee had heard witnesses, read affidavits, and examined court records before making such complaint. This witness was also permitted to state that the members of the committee, in making such complaint, were actuated, not by improper motives, but by the evidence they so received. As already said, this is a civil trial, and the rules of law governing such trials should obtain in the admission of evidence. Hearsay testimony should be excluded. Furthermore, the motives which actuated the signers of this complaint were immaterial to any issue in the trial.

It appears that counsel for the state was permitted to argue the reputation and high standing of the lawyers who signed this complaint, and their motives and beliefs in so doing. This was error. The complaint, as already stated, is nothing but a pleading, and is no evidence of guilt; neither were the motives which actuated the signers of any rightful consequence to the jury. Argument such as this was calculated to cause the jury to allow the opinions of the makers of the complaint to influence them in deciding the facts. Indeed, the attorney making such argument could have had no other purpose.

Finally, as already noted, this is an immense record, and the application contains numerous assignments. We have not discussed all of them, but we take it that our holding that this is simply a civil proceeding, together with the other matters discussed, will be sufficient to guide the trial court and attorneys in correctly conducting another trial.

For the errors discussed we recommend that the judgments of the district court and Court of Civil Appeals be both reversed and the cause remanded to the district court for a new trial.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.